```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

| | |
|---|---|
| Bridgett Bolotin, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| v. | ) No. 24 CV 1686 |
| | ) |
| | ) |
| Apotex Corp., Apotex, Inc., | ) |
| Apotex | ) |
| | ) |
| Defendants. | |

<u>Memorandum Opinion and Order</u>

The amended complaint in this case recounts the following facts. In December of 2020, sixteen-year-old Bridgett Bolotin was prescribed Guanfacine, a medication manufactured by defendant,[1] to treat her Attention Deficit Hyperactivity Disorder. A CVS pharmacy in Vernon Hills, Illinois (the "Vernon Hills CVS") filled her prescription for Guanfacine Extended-Release Tablets 2mg NDC Number 60505392801 on or around December 31, 2020, and she began taking the medication the same day. Shortly thereafter, Bridgett began experiencing "a variety of symptoms of poor and deteriorating

---

[1] Although plaintiff originally named three defendants in this action, she appears to be proceeding only against Apotex Corp., as she does not contradict Apotex Corp.'s representation in its removal notice that no other defendant has been served. Accordingly, references to "defendant" in this decision are to Apotex Corp.

health, including severe depression and suicidal ideations," leading to her hospitalization on January 11, 2021. Am. Compl. at ¶¶ 21-22.

While in the hospital, Bridgett continued her Guanfacine therapy with tablets administered by the hospital. Bridgett's symptoms improved, and she was discharged home, where she resumed taking the Guanfacine tablets she received from the Vernon Hills CVS. Her symptoms of poor and deteriorating health returned, and she went back to the hospital due to suicidal ideations on January 28, 2021. While there, Bridgett again took Guanfacine from the hospital's supply and was again discharged after her symptoms improved. Less than a week later, however, during which time she took the Guanfacine from the Vernon Hills CVS, Bridgett was admitted to the hospital's psychiatric unit after expressing that she planned to kill herself. There, Bridgett again took Guanfacine from the hospital's supply and was discharged for a third time after her symptoms improved. The Amended Complaint does not state whether she resumed her Guanfacine therapy thereafter.[2]

On March 31, 2021, defendant issued a voluntary recall of three lots of Guanfacine Extended-Release Tablets 2mg after

---

[2] I note, however, that plaintiff's original complaint alleged that "[b]eginning on or about December 31, 2020, BRIDGETT BOLOTIN ingested one aforementioned Extended-Release tablet 2mg every day for ninety (90) days in accordance with her prescription and instructions." Compl., ECF 1-1 at ¶ 23. This allegation is omitted from the Amended Complaint.

2

determining that one of the lots was contaminated with trace amounts of Quetiapine Fumarate, which is a drug used to treat psychiatric conditions such as such as schizophrenia, bipolar disorder, and depressive episodes. According to the Amended Complaint, taking Guanfacine contaminated with Quetiapine Fumarate causes adverse effects, "including, but not limited to, symptoms of poor and deteriorating health, including severe depression and suicidal ideations." Am. Compl., at ¶ 39.

Bridgett alleges that the container in which the Vernon Hills CVS delivered her Guanfacine tablets did not identify their lot number. The Amended Complaint states:

> As evidenced by the fact that Plaintiff suffered from suicidal ideation and depression while consuming Defendant's Guanfacine Extended-Release 2mg tablets purchased at CVS on December 31, 2020, and the fact that her health improved while she stopped taking that supply, Defendant's product was the cause of her symptoms, which led to suicidal ideation and three separate hospitalizations.

Am. Compl. at ¶ 43.

On January 26, 2024, Bridgett filed this action in the Circuit Court of Cook County, in which she claimed to have suffered "severe and permanent injuries of a personal and pecuniary nature" as a result of taking contaminated Guanfacine and asserted claims of strict liability and negligence. Defendant removed the case based

3

on the diversity jurisdiction[3] and later filed a motion to dismiss for failure to state a claim. In response, plaintiff filed the Amended Complaint, which defendant likewise seeks to dismiss on the ground that its factual allegations do not raise Bridgett's right to recovery above the speculative level. Because I agree that the complaint does not assert sufficient facts to raise a plausible inference that Bridgett's symptoms were proximately caused by contaminated Guanfacine, I grant the motion.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that plausibly suggest a right to relief. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is

---

[3] Plaintiff is an Illinois citizen, and defendant is a citizen of Florida, where it is headquartered, and Delaware, where it is incorporated. Plaintiff's complaint claims damages "in excess of $50,000." According to the notice of removal, "Apotex asked Plaintiff's counsel to stipulate that the amount in controversy was less than $75,000, but he would not so stipulate and stated instead that the amount in controversy exceeds $75,000." Accordingly, jurisdiction is secure. *See Kadambi v. Express Scripts, Inc.*, No. 1:13-CV-321-JD-RBC, 2014 WL 2589673, at *6 (N.D. Ind. June 10, 2014) ("where a plaintiff does not stipulate to damages below the jurisdictional amount after being requested to do so, 'the inference arises that he thinks his claim may be worth more.'") (quoting *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000)).

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2008)). This means that a complaint whose allegations are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Id.* (quoting *Twombly*, 550 U.S. at 557)). While I accept all well-pleaded factual allegations as true and draw all reasonable inferences in plaintiff's favor in deciding if a complaint crosses this threshold, I need not accept conclusory allegations or legal conclusions. *Iqbal*, 556 U.S. at 680-82.

Plaintiff's allegations suggest a number of theories of liability, but because both of her claims sound in tort, she must adequately plead, at a minimum, the basic elements of duty, breach, proximate causation, and damages. *See In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 851 (N.D. Ill. 2022). Proximate causation entails "two distinct requirements: cause in fact and legal cause." *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992).[4] The first is satisfied "when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Id.* While proximate cause is generally a question of fact, "the lack of proximate cause may be determined by the court as a matter

---

[4] As a federal court sitting in diversity, I apply Illinois law to the issues presented here. *See Paulsen v. Abbott Labs*, 39 F.4th 473, 477 (7th Cir. 2022).

5

of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1128 (Ill. 2004). Accordingly, "when the alleged facts fail to establish proximate causation, then dismissal is appropriate." *Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d at 851. That is the case here.

The Amended Complaint's most salient shortcoming is that it fails to allege affirmatively the factual cornerstone of plaintiff's claims: that she actually took contaminated Guanfacine tablets. To the contrary, plaintiff tacitly concedes that she does not know if the Guanfacine tablets she obtained from the Vernon Hills CVS were from the contaminated lot. The most she can say, based on the tablets' alleged NDC Number, is that they were within the scope of the product recall. But the recall notice, which I may consider because it is attached to defendant's motion, plaintiff refers to it in her complaint, and it is central to her claims, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), states that contaminants were found in only one of the three recalled lots; the other two were recalled "[o]ut of an abundance of caution." Mot., Exh. 1, ECF 22-1. Because plaintiff's tablets could have come from any of the three lots, her allegations logically raise only a one-in-three chance that they were contaminated. Accordingly, her allegations do not

6

suggest a "reasonable certainty" that defendant's conduct caused the injuries she claims.

Nor can plaintiff reverse-engineer the factual premise of her claims inferentially by starting with the fact of her symptoms. To be sure, it is appropriate to draw reasonable inferences from a complaint's factual allegations when determining whether a plaintiff has pled the necessary elements of her claim. That is why a plaintiff who asserts affirmatively that she took a contaminated medication, then suffered symptoms associated with contamination, survives dismissal, even though the evidence might ultimately rebut the inference that the contaminated medication caused her symptoms. But that is not what plaintiff does here. Rather than contact the Vernon Hills CVS to determine whether her tablets were indeed from the contaminated lot (which is what the recall notice advises patients to do, *see* Mot., Exh. A ("Patients who have received either (sic) of the three impacted lots of Guanfacine Extended-Release Tablets or have questions regarding this recall should contact their pharmacy")), plaintiff relies on an entirely circular chain of inference: She alleges that because she experienced symptoms after taking the Guanfacine from the Vernon Hills CVS, the tablets must have been contaminated, then claims that the contaminated tablets caused her symptoms. If there is any authority holding that allegations such as these adequately plead proximate causation, plaintiff has not cited it.

7

Moreover, the symptoms plaintiff experienced are not among those that the recall notice identified as potential effects of taking Guanfacine contaminated with trace amounts of Quetiapine Fumarate. The "Risk Statement" in the recall notice states:

> Administration of Guanfacine Extended-Release Tablets containing trace amounts of Quetiapine Fumarate to a patient can result in the possibility of hypersensitivity reaction and may potentially have additive effects in lowering blood pressure, sleepiness/sedation, and dizziness. Pediatric patients, pregnant patients and older adults may be more likely to experience low blood pressure and dizziness if exposed to the defective product. To date, Apotex Corp has not received any reports of adverse events related to this recall.

Mot., Exh. 1. Accordingly, plaintiff's allegation that taking Guanfacine contaminated with Quetiapine Fumarate causes "symptoms of poor and deteriorating health, including severe depression and suicidal ideations" appears to be entirely speculative. In response to defendant's motion, plaintiff tries to bolster her allegations by pointing to the package insert for Seroquel, a brand of Quetiapine Fumarate, which warns that children, adolescents, and young adults taking antidepressants may be at increased risk of suicidal thoughts. Resp., Exh. 1, ECF 29-1. Even assuming that I may consider this evidence, it does not make plaintiff's allegations any less speculative. Indeed, the Seroquel warning concerns patients "taking" or "treated with" antidepressants, *id.* at 2, 8, 9, which in the case of Seroquel, means taking 150mg to 800mg of the drug daily. These warnings simply offer no factual

8

basis for claiming that trace amounts of Quetiapine Fumarate taken incidentally are associated with any such symptoms.

For the foregoing reasons, I conclude that plaintiff's Amended Complaint fails to allege plausibly that the injuries she claims were proximately caused by the misconduct she attributes to defendant. Accordingly, the complaint is dismissed without prejudice. If plaintiff can amend her complaint to cure the deficiencies noted herein consistently with her (and her attorney's) obligations under Fed. R. Civ. P. 11, she may do so on or before September 3, 2024. Otherwise, dismissal will become with prejudice as of the following day.

                                **ENTER ORDER:**

                                _____
                                **Elaine E. Bucklo**
                                United States District Judge

Dated: August 2, 2024